784

## SWANSON CHEMICAL CORPORATION v. DORAN et al.

### No. 4895.

District Court, E. D. Pennsylvania.

Feb. 7, 1929.

Michael Serody, of Philadelphia, Pa., for plaintiff.

R. H. Woolsey, Sp. Counsel, and Calvin S. Boyer, U. S. Atty., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge.

This case began as a motion for a preliminary injunction. The hearing was by stipulation expanded to one on final decree. The underlying question is that which, so far as this court is concerned, has been answered in the case of Casper, trading as the Del Mar Manufacturing & Chemical Co. v. Doran et al., 30 F.(2d) 400, which was heard at the same time as the instant case. The defendants differentiate this from the Del Mar Case, in that the plaintiff here holds a permit not for an alcoholic nonbeverage product, but a "liquor" permit, in that it may sell either or both alcohol or alcohol as a denatured product. There is, of course, a difference in fact between the manufacture of an alcoholic nonpotable product, in the manufacture of which denatured alcohol is an ingredient, and a manufacture of denatured alcohol itself. There would not seem, however, to be any difference in the permit classification because both are listed among "articles" enumerated in section 4 of title 2 of the National Prohibition Act (27 USCA § 13). The two classes of products, if they may be called such, would thus seem to have the like permit. A differentiation, it is true, is made between the first four "articles" and the remaining two, but this differentiation is for a wholly different purpose than that of permit regulation. It is likewise true that this differentiation is based upon the fact difference that the "articles" enumerated in the first four classifications may readily be made potable. The truth remains, however, that a manufacturer of denatured alcohol and a manufacturer of flavoring extracts have the same permit rights under section 4 of the act.

The defendants' answer to this is, as we understand their position, "that a permit to operate the denaturing plant carries with it the right to buy and sell ethyl alcohol and that the defendant (evidently intended for plaintiff) has continually bought and sold ethyl alcohol under and by virtue of its permit."

We are constrained to confess that we do not understand this branch of the defense. Its position at the tail end of the answer gives the impression of the afterthought of a mere make weight comment. The real defense is that in the view of the defendants they may impose the time limit duration of a year upon all permits to produce the "articles" enumerated in section 4.

This very question would seem to be the same sought to be raised on the motion for a preliminary injunction disposed of in the decree of this court under date of February 18, 1926. It is true that the defendants then conceded that upon the fact merits of the application for a permit the plaintiff had the right to one, and that a decree requiring the permit to issue should properly be entered. They asked the court to pass upon the ab-

stract power of the Commissioner to adopt a regulation limiting permits in such cases to a year. It is likewise true that the court refused to pass upon this question, because it did not arise in the case, but the question would seem to be the same, and we are unable to discover in the answer anything more than the raising of the very question which has been ruled in the Del Mar Case. It is always helpful in any discussion to have a frank avowal of what the real question under discussion is. In the Ma-King Products Co. v. Blair (C. C. A.) 3 F.(2d) 936, and other cases the courts have ruled in practical effect that on applications for original permits the Commissioner is called upon to exercise his executive or administrative judgment of whether a permit should issue, and upon the question of issue the courts have granted him what is practically the right to exercise his discretionary judgment. After however, a permit had been granted the Commissioner can revoke it only in the manner prescribed by the act of Congress, and the judgment there exercised is not an executive or administrative judgment, but is a judicial judgment, the basis of which is a fact finding. The defendants are strongly impressed with the value to them of the lawful power to exercise at least once a year an executive or administrative control over permits, so that they may escape the need to resort to a judicial fact finding. This is the very power, however, which we have held the defendants do not possess. If the permit here is one to manufacture or sell "liquor," no regulation limiting its operation to a year is needed, because section 6, tit. 2 (27 USCA § 16) expressly so limits it by law.

The only question before us thus becomes whether the permit in question is the one permit or the other. This is in one view a question of law and in another view a question of fact. We assume the stipulation at bar to include that the court is to determine the character of the permit from the records which are before the court. We begin with the application under date of January 15, 1924, which is an application for a permit to operate a denaturing plant under the provisions of title 3 of the National Prohibition Act (27 USCA §§ 71–89). This is followed by the issuance of a permit under date of October 7, 1924, which authorized the operation of a denaturing plant, and incidentally that it should continue until revoked in accordance with the law.

The ruling made is that the permit in question, so far as the rights of the permitee are concerned, is in the same class with the permits granted to manufacturers of the other "articles" enumerated in section 4, and that in consequence the decree prayed for should be granted.

A formal decree is filed herewith.